UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

CHARLOTTE M. SMALLWOOD-WOLF,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-332 JD

**OPINION AND ORDER**

Plaintiff Charlotte Smallwood-Wolf appeals the denial of her claims for disability insurance benefits under Title XVI of the Social Security Act. For the reasons below, the Court will affirm the Commissioner's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the

claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B. **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C.  The ALJ's Decision**

Plaintiff filed a Title XVI application for supplemental security income disability benefits alleging disability beginning in March 31, 2000.[1] Her claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on November 16, 2023.

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "fibromyalgia; chronic pain syndrome; migraine headaches; ADHD; bipolar disorder; depressive disorder; panic disorder; psychophysiologic insomnia; history of substance use disorder; obesity; and minimal degenerative disc disease with sciatica." (R. at 22.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*)

Among other things, in fashioning the RFC,[2] the ALJ considered the prior administrative medical findings of the state agency physician Dr. Donna Unversaw. As relevant to this appeal, Dr. Unversaw offered the following opinion regarding Plaintiff's mental residual functional capacity:

> It appears that [claimant] would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded. The claimant would appear to work best alone, in semi-isolation from others or as part of a small group.
>
> Totality of the [medical evidence of record] suggests the claimant seems to be able to maintain at least a minimal level of relationship with others.

---

[1] As the ALJ notes, an individual is not eligible for supplemental security income payments before the date of her application. (R. at 17 (citing 20 C.F.R. § 416.335).) Therefore, the relevant dates in this case are from October 4, 2022 (Plaintiff's protective SSI application date), through January 22, 2024 (the date of the ALJ's decision). Implicit in Plaintiff's allegation of the March 2000 onset date was "an implied request to reopen multiple prior supplemental security income applications." (R. at 17.) However, the ALJ did not reopen any of the prior claims (*id.*), and they're not being considered in this appeal.

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

4

> The evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(R. at 153.)

The ALJ stated that she was in "general agreement" with Dr. Unversaw's opinion that, while Plaintiff has some social limitations, she has no continuous difficulty interacting with others in public places. (R. at 29–30.) Even so, the ALJ noted that the terms "sustained" and "intensive" interpersonal contact, as used by Dr. Unversaw, are not defined in vocational terms and are not supported by clinical evidence. As a result, the ALJ declined to incorporate that limitation into the RFC. At the same time, however, the ALJ explained that it would assess a more restrictive limitation on Plaintiff's contact with the public, stating that she could have no interaction with the public at all:

> Despite the longitudinal evidence since October 2021 that reflects the claimant can go to multiple places in public without significant symptom interference, the residual functional capacity assessment precludes interaction with the general public and reduces the claimant to occasional interactions with coworkers and supervisors, which minimizes social stressors that could exacerbate the claimant's symptoms.

(R. at 30.)

In addition, the ALJ disagreed with Dr. Unversaw that Plaintiff could perform detailed but not complex tasks, once again explaining that a more restrictive limitation would be assessed in the RFC:

> Despite the above-described clinical findings and documentation of the claimant's interest in reading and performing research at the library, the undersigned disagreed with State Agency medical consultant Dr. Unversaw's opinion that the claimant could perform detailed, but not complex tasks. Dr. Unversaw did not cite to any of the evidence noted within the determination to support her task-complexity finding, and the undersigned was not persuaded to adopt this limitation into the claimant's residual functional capacity—even though the record is not entirely consistent with or describe significant attention or understanding deficits—because simple work

5

> that is not performed at a specific production rate accommodates the few documented occasions of impaired judgment, minimizes the exacerbation of anxiety, and accommodates any physical pain that may be present from migraines, as explained directly below.

(R. at 30 (citation to the record omitted).)

The ALJ assessed Plaintiff with the RFC to perform light work[3] with various exertional limitations, along with the following non-exertional limitations:

> understand, remember, and carry out simple instructions and tasks; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can deal with occasional changes in a routine work setting; occasional interactions with coworkers and supervisors, and no interaction with the public, but contact with supervisors still includes what is necessary for general instruction, task completion, or training.

(R. at 28.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there were jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: classifier, housekeeper, and inspector/hand packager. (R. at 64.) The ALJ accepted the VE's testimony, ultimately finding that Plaintiff was not disabled. (R. at 34–35, 36.)

**D. Discussion**

Plaintiff argues that the ALJ unreasonably rejected and failed to include Dr. Unversaw's opinion regarding her limitations in the RFC. Moreover, according to Plaintiff, by disregarding

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

Dr. Unversaw's opinion, which was the only opinion in the record, the ALJ created an evidentiary deficit, which she filled with her own opinion about Plaintiff's limitations, thus impermissibly "playing doctor." Plaintiff also submits that the ALJ failed to consider evidence from the Bowen Center, which noted that Plaintiff's symptoms were "uncontrolled" in May 2023, effectively ignoring evidence contrary to the RFC assessment.

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024), "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). 20 C.F.R. § 404.1545(a)(2). ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.")

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*,

7

142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

Plaintiff's first argument—that the ALJ should have included in the RFC Dr. Unversaw's limitations from the prior administrative findings—would reduce the mental functioning restrictions assessed by the ALJ, thus undermining her own case. After all, the ALJ assessed a more restrictive RFC than Dr. Unversaw. Dr. Unversaw stated that "[i]t appears that [claimant] would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded." The ALJ expressed "general agreement" with this opinion, but nevertheless eliminated all contact with the public for Plaintiff (R. at 28 ("no interaction with the public")) to "minimize[] social stressors that could exacerbate the claimant's symptoms." (R. at 30.)

In her reply brief, Plaintiff ignores that the ALJ excluded her contact with the public altogether,[4] boldly asserting that the ALJ limited her interactions with the public to only "occasional." (Pl.'s Rep. Br., DE 24 at 1.) That's contrary to what the RFC states. Moreover, in an effort to show that Dr. Unversaw's restriction was greater, Plaintiff attempts to nullify Dr. Unversaw's finding that she can have *occasional* contact with the public. She does so by reading the second clause of Dr. Unversaw's limitation concerning public interactions—"but sustained, intensive, interpersonal contact would be precluded" (R. at 153)—to signify a greater restriction than the "occasional" contact expressly allowed earlier in the same sentence. (Pl.'s Rep. Br., DE

---

[4] "[O]ccasional interactions with coworkers and supervisors, *and no interactions with the public*, but contact with supervisors still includes what is necessary for general instruction." (R. at 28 (emphasis added).)

8

24 at 2–3). This reading is convoluted and incompatible with the plain language of the opinion: that Plaintiff can have "occasional contact with the public," but the contact cannot be "sustained, intensive, or interpersonal." Simply put, her argument that the ALJ rejected Dr. Unversaw's opinion in favor of lesser restrictions concerning contact with the public lacks merit.

Plaintiff also ignores that the ALJ imposed another restriction that is more limiting than Dr. Unversaw's. The RFC states that Plaintiff can "understand, remember, and carry out simple instructions and tasks" (R. at 28), whereas Dr. Unversaw limited her to only "detailed, but not complex tasks." (R. at 153.) Again, if the Court were to accept Plaintiff's arguments about Dr. Unversaw's prior administrative findings, her restrictions would be less severe than those assessed by the ALJ in the RFC, hardly the outcome she is seeking.

Plaintiff next argues that by rejecting Dr. Unversaw's opinions, the ALJ created an evidentiary deficit, which she then filled by substituting her own lay opinions for those of the experts and thus "played doctor." But apart from this generic accusation, Plaintiff does not explain which portion of the RFC reflects the ALJ's alleged lay opinion. Rejecting a medical opinion or opinions, standing alone, does not create an evidentiary deficit. "Rather, the question is whether the rest of the record supports the ALJ's RFC assessment." *Laughton v. O'Malley*, No. 1:23-CV-35-HAB, 2024 WL 748752, at *5 (N.D. Ind. Feb. 22, 2024). This principle was underscored in *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010), where the Seventh Circuit stated that an evidentiary deficit arises only when the ALJ rejects medical opinions and "[t]he rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination." *Id*. at 690.

What's more, in construing the RFC, the ALJ did not merely reject Dr, Unversaw's opinion. Instead, the ALJ explained that she wanted to provide additional safeguards for

9

Plaintiff. For example, the ALJ provided for no contact with the public and reduced Plaintiff to occasional interactions with coworkers to "minimize[] social stressors that could exacerbate [her] symptoms." (R. at 30.) Likewise, the ALJ limited her to simple work "because simple work that is not performed at a specific production rate accommodates the few documented occasions of impaired judgment, minimizes the exacerbation of anxiety, and accommodates any physical pain that may be present from migraines." (*Id*.) Similarly, the RFC was fashioned to avoid triggering panic attacks, even if the record contained limited evidence of such attacks. (R. at 31.)

Also, in fashioning Plaintiff's RFC, the ALJ noted that she "has remained highly active running errands in the community, sometimes with her skills coach, sometimes without her skills coach." (R. at 29.) And insofar as she used a skills coach, Plaintiff's longstanding mental health provider, Dr. Carolyn Greer, noted that Plaintiff needs skills-based services largely for transportation. (R. at 29, 992) ("She will continue to participate in skills-based services although it appears these are largely for transportation."). As the ALJ observed, one example supportive of this notion was a March 2022 note from Plaintiff's skills coach saying she accompanied her to Dollar General to get groceries so Plaintiff would not have to walk to get them and so that Plaintiff could get heavier items she needed (R. at 29, 526.) The ALJ recounted that Plaintiff regularly visited several public places without experiencing significant interference from psychological symptoms, such as the pharmacy, the grocery store, Dollar General, gas stations, the bank, the public library, and the Medicaid office (R. at 29.). As well, she went some places on her own, or with another person: the library, a mini vacation to Chicago, her daughter's high school musical, book club meetings, and out to eat (*Id*.)

Similar to *Laughton*, No. 1:23-CV-35-HAB, 2024 WL 748752, the ALJ reviewed and weighed the evidence, including Plaintiff's function reports, her testimony, her mother's reports,

medical evidence provided by her treating doctor, and the opinion of the agency reviewing doctor. *Id*. at *5. Plaintiff has not shown that the ALJ "played doctor." Instead, she is asking the Court "to re-weigh the evidence, which is beyond the scope of this Court's permitted review." *Id*.

Finally, Plaintiff argues that the ALJ ignored an entire line of evidence contrary to the RFC by singling out her May 24, 2023, visit with Dr. Greer, who noted under "Reason for Visit" that her bipolar symptoms are uncontrolled:

> Bipolar disorder
> This is a follow up visit. Related symptoms are uncontrolled. The client presents with compulsive thoughts, diminished interest or pleasure and excessive worry but denies anxious/fearful thoughts, fatigue, hallucinations, paranoia, restlessness or thoughts of death or suicide. The client's relieving factors are medication. The client denies any weight gain. Additional information: She said her depression symptoms are worse, she is grieving.

(R. at 971.) During the same visit, Dr. Greer noted that Plaintiff's mental status was unremarkable; her mood was euthymic; she had full affect; clear speech; logical thought process; her perceptions were within normal limits; she had no hallucinations, her thought content, cognition, insight, and judgment were within normal limits; and she didn't report any delusions. (R. at 973.)

Yet "a diagnosis or symptoms alone are not evidence of disability; what matters are the work-related limitations that result from a particular medical impairment." *Thomas v. Kijakazi*, No. 22-CV-650, 2023 WL 8921819, at *5 (W.D. Wis. Dec. 27, 2023) (citing *McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone."); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *Perez v. Astrue*, 881 F.

Supp. 2d 916, 945 (N.D. Ill. 2012) ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing.")). Absent from Plaintiff's briefs is any mention of how the RFC should account for this one-time notation, especially given that there are many visits documenting "controlled" bipolar (R. at 1073, 1040, 962, 957, 944) or "fairly controlled" (R. at 1103, 1005, 939). Most importantly, though, Plaintiff has not shown that Dr. Greer's finding in May 2023 that her bipolar condition was uncontrolled is contrary to the RFC. In fact, her briefs are silent on this question, and there is no medical opinion in the record indicating greater limitations than those found by the ALJ. Besides, the ALJ reviewed Plaintiff's clinical reports, which include Dr. Greer's medical notes. (*See* R. at 26, 27, 29 (discussing Dr. Greer's notes).) And while the ALJ did not list Dr. Greer's appointments one by one, she summarized the clinical evidence, noting the range of medical reports. For example, the ALJ noted that

> since October 2021, the clinical findings largely describe the claimant as having average intelligence, and even when her mood was abnormal, the examination findings do not describe significant attention or concentration deficits. However, on occasion, the claimant's judgment was mildly impaired, and it appears that her provider attributed that finding to the claimant's substance use or the claimant's reliance on support to pay bills, make appointments, and arrange transportation (Ex. C1F, C3F, C7F).

(R. at 30.) ALJ's are allowed to summarize evidence, *see Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[I]f [plaintiff] is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate."), and, by their nature, summaries don't include every detail, *id*. ("True, the ALJ's summary does not mention every detail. But it need not.").

Plaintiff argues that Dr. Greer's positive observations regarding her wellbeing during the appointment bear little weight because bipolar illness by its nature has ups and downs. But this

argument ignores the fact that the ALJ did recognize that Plaintiff has ups and downs, as noted above. And for that very reason, the ALJ included in the RFC restrictions against her having contact with the public and limited her to only occasional interaction with coworkers and supervisors, as well as only occasional changes in a routine work setting. Plaintiff's inability to identify flaws with the ALJ's treatment of the clinical record and her failure to identify any further restrictions in the RFC renders her argument null. *See Gedatus*, 994 F.3d at 905 (7th Cir. 2021) (where plaintiff "failed to show how her medically determinable impairments caused any limitations beyond those the ALJ found," she has failed to carry her burden of proof); *see also Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations . . . because he hypothesizes none" and "the medical record does not support any.").

In summary, the Court finds that the ALJ's RFC is based on substantial evidence, and the ALJ provided a logical bridge from the evidence to her RFC determination.

### E. Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 24, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court